IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNA SOSNINA, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 15-2637 |
| | : | |
| ROBERT D. SCHADEGG | : | |
| *CODE ENFORCER, LOWER* | : | |
| *MORELAND TOWNSHIP* | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                            **March 30, 2016**

This case centers on pro se Plaintiffs Anna Sosnina and Larken Rose's refusal to consent to a warrantless inspection of an addition under construction at 510 Newell Drive in Huntingdon Valley, Pennsylvania (the Property). Following Plaintiffs' refusal, Defendant Robert D. Schadegg, the Code Enforcer for Lower Moreland Township, issued a citation to Sosnina pursuant to Pennsylvania's Uniform Construction Code. Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 alleging the citation violated Sosnina's Fourth Amendment rights under *Camara v. Municipal Court*, 387 U.S. 523 (1967), and constituted retaliation against Rose for exercising his Fourth Amendment right to refuse the inspection. Schadegg moves the Court to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Because Plaintiffs did not have a Fourth Amendment right to refuse to permit the inspection in question, and because a warrantless inspection did not take place, Schadegg's motion will be granted.

## FACTS[1]

---

[1] The following facts are drawn from Plaintiffs' Complaint and the exhibits to Schadegg's motion to dismiss, all of which are "documents whose contents are alleged in the complaint and whose authenticity no party questions" or documents "referred to in the plaintiff's complaint [that] are central to the claim" and may therefore be considered at the motion to dismiss stage. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation an internal

On September 29, 2009, Lower Moreland Township issued a building permit for the construction of a two-story residential addition at the Property, which was then owned by Plaintiff Larken Rose's parents. The permit identified Rose as the contractor for the project and specified that all work related to the permit "shall comply with the regulations of the latest edition of the International Building and/or Residential Codes as adopted by Lower Moreland Township." Mot. to Dismiss, Ex. A. The permit also indicated all inspections would be requested two business days prior. The family's intention was for Rose and his family to reside in the addition and help care for his elderly parents. Before the addition could be completed, however, Mr. Rose's parents died. Work on the addition was significantly delayed due to the passing of the elder Roses and financial difficulties. Although Rose inherited the Property following his parents' death, he sold the Property to Plaintiff Anna Sosnina in 2014, subject to an agreement that Rose and his family could continue to reside at the Property.

On February 6, 2015, Defendant Robert Schadegg, the Code Enforcement Officer for Lower Moreland Township, sent a letter to Sosnina, with a copy to Rose, informing her the building permit for the Property was invalid "[a]s a result of the permit's abandonment and the time period which has elapsed," and no further work could be performed on the Property until a

---

quotation marks omitted). The Court has also consulted the dockets in summary criminal proceedings against Sosnina (Docket Nos. MJ-38208-NT-0000145-2015 and CP-46-SA-0000730-2015), matters of public record which may be considered on a motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (holding matters of public record a court may consider on a motion to dismiss "include criminal case dispositions such as convictions or mistrials"). The Court accepts all of the factual allegations in the Complaint as true, *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and construes them liberally in favor of Plaintiffs, who are proceeding pro se, *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013).

new permit was obtained and "diligent work performed."[2] Mot. to Dismiss, Ex. B. The letter stated, allegedly erroneously, that "no substantial work ha[d] been performed nor inspections requested or performed on the Property since August 18, 2010," and requested that Sosnina contact the Township's Building Department to schedule an inspection within 30 days for the purpose of "determin[ing] compliance with § 403.84 'Unsafe building, structure or equipment' and the dwelling's ability to support occupancy."[3]

On March 26, 2015, Schadegg sent another letter to Sosnina, again copied to Rose, notifying her that because she had failed to schedule the inspection, the Building Department had scheduled it for April 8, 2015, at 10:00 a.m. The letter stated the inspection was authorized by § 403.86 of the Uniform Construction Code and was necessary "to determine if the dwelling is safe for occupancy as a result of incomplete construction which may cause an unsafe condition." The letter also advised that "[f]ailure to allow the inspection will cause the issuance of a citation and possibly an order to vacate the building per § 403.84 'Unsafe building, structure or equipment.'"

---

[2] The letter asserted the lack of work violated § 403.63(g) of the Pennsylvania Uniform Construction Code, which provides "[a] permit becomes invalid unless the authorized construction work begins within 180 days after the permits issuance or if the authorized construction work permit is suspended or abandoned for 180 days after the work has commenced." 34 Pa. Code § 403.63(g). Although this provision authorizes a building code official, upon the written request of the permit holder, to extend the time to commence construction, "[a] permit may be valid for no more than 5 years from its issue date." *Id.*

[3] Section 403.84(a) of the Uniform Construction Code authorizes building code officials to "determine that a building, structure or equipment is unsafe because of inadequate means of egress, inadequate light and ventilation, fire hazard, other dangers to human life or the public welfare, illegal or improper occupancy or inadequate maintenance." 34 Pa. Code § 403.84(a). The Code provision further specifies "[a] vacant building or structure that is not secured against entry is unsafe under this section." *Id.*

3

On April 3, 2015, Rose wrote to Lower Moreland Township in response to Schadegg's letters. Rose explained that while work on the Property had been "very slow" for several years, Schadegg's assertion that no substantial work had been performed on the Property since August 18, 2010, was false. He also advised that, "as the current tenants of the property we will not be allowing an inspection on April 8th, as it would serve no purpose." Rose maintained inspecting the Property to determine whether it was safe for occupancy would be "a pointless waste of time" because, although the addition was not yet up to code for occupancy, there was no occupancy permit for the addition and no one living there, and the minor work done to the occupied portion of the Property had already been inspected. The letter requested that the Township "simply stay out of the way, and allow us to finish the project, without putting more paperwork and expenses in our way." According to the Complaint, Rose sent the letter without Sosnina's knowledge or participation, though Sosnina is listed on the letter as a "cc."

Although Rose was at the Property on April 8, 2015, no inspector ever appeared for the inspection. Nevertheless, a week later, on April 15, 2015, Schadegg wrote to Sosnina, again copying Rose, advising that as a result of her failure to provide an inspection of the addition space, a "penalty action" had been taken. The letter enclosed a citation imposing a $1,000 fine on Sosnina for failing to provide an inspection, in violation of 34 Pa. Code § 403.86, a summary offense.

On May 4, 2015, Plaintiffs filed the Complaint in this action, alleging the issuance of the citation to Sosnina for refusing to allow a non-emergency, warrantless inspection of the Property violated Plaintiffs' Fourth Amendment rights under *Camara v. Municipal Court*, 387 U.S. 523 (1967), and/or constituted retaliation against Rose for exercising his Fourth Amendment right to refuse the inspection. Plaintiffs allege they suffered significant unnecessary stress and

inconvenience as a result of the citation. They seek compensatory and punitive damages against Schadegg in his individual capacity and declaratory and injunctive relief against Schadegg in his official capacity.

On June 11, 2015, while this action was pending, a Magisterial District Judge adjudicated Sosnina guilty of the summary offense,[4] and Sosnina thereafter filed a summary appeal. On November 10, 2015, following an October 8, 2015, hearing and argument, the Court of Common Pleas issued an order denying in part Sosnina's appeal, directing the parties to schedule an inspection of the Property at a mutually convenient day and time, and deferring decision on the $1,000 fine pending the inspection. Def.'s Second Suppl. Br. Ex. A. The inspection took place on December 1, 2015, and on December 18, 2015, the Court of Common Pleas issued a further order striking the assessment of the fine.[5] The adjudication of guilt, however, has not been stricken.

Schadegg moves to dismiss the Complaint in this action, arguing (1) Plaintiffs have failed to state a claim for an improper inspection under the Fourth Amendment because no inspection was ever conducted; (2) any improper search claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), because Sosnina's conviction for failure to permit an inspection has not been set aside; (3) Plaintiffs have failed to identify a constitutional right that the imposition of a fine

---

[4] According to Plaintiffs, the Magisterial District Judge adjudicated the summary offense by default when Sosnina did not appear at the hearing because she was stuck in traffic. *See* Pls.' Opp'n to Mot. to Dismiss 2. Schadegg maintains that Rose raised constitutional defenses to the fine on Sosnina's behalf at the June 11, 2015, hearing, Mot. to Dismiss 10, but Sosnina disputes this, asserting he was not permitted to present argument or testimony because he was not a party to the citation.

[5] Plaintiffs admit they allowed the inspection to occur, but claim they did so under duress. Pls.' Suppl. Br. in Opp'n to Mot. to Dismiss 2. Plaintiffs also assert no safety hazards were found during the inspection. *Id.*

allegedly violated; (4) Plaintiffs' allegation that the imposition of a fine for refusing an inspection violated the Fourth Amendment is based on a misinterpretation of the law; (5) the doctrine of abstention applies;[6] and (6) Schadegg is entitled to qualified immunity. Schadegg also argues the claims against him in his official capacity should be dismissed because the claims should have been brought against Lower Moreland Township. In response to Plaintiffs' argument, in their opposition, that Plaintiffs are bringing a retaliation claim against Schadegg, Schadegg argues this claim should be dismissed because Rose's refusal to permit the inspection was not protected activity, as he did not assert his Fourth Amendment rights in his letter notifying the Township the inspection would not be allowed.

**DISCUSSION**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a district court first must separate the legal and factual elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the

---

[6] Abstention is appropriate when (1) there is a pending state judicial proceeding; (2) the proceeding implicates important state interests; and (3) the state proceeding affords an adequate opportunity to raise constitutional challenges. *Zahl v. Harper*, 282 F.3d 204, 209 (3d Cir. 2002). Although at the time Schadegg filed his motion to dismiss there was a pending state judicial proceeding, as noted above, it has since been adjudicated; as grounds for dismissal, therefore, abstention is longer applicable.

complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Plaintiffs allege Schadegg's initiation of summary criminal proceedings against Sosnina for refusing to permit a non-emergency warrantless inspection of the Property violated her rights under the Fourth Amendment. Plaintiffs also allege Schadegg violated Rose's constitutional rights by issuing the citation to Sosnina in retaliation for Rose's exercise of his Fourth Amendment right not to allow the warrantless inspection.

To be sure, Plaintiffs do not allege their Fourth Amendment rights were violated as a result of a warrantless inspection, only that they were within their Fourth Amendment rights to refuse the inspection. Thus, to determine whether Plaintiffs have stated a plausible claim for relief, the Court must first determine whether Plaintiffs had a Fourth Amendment right to refuse to allow the inspection under the circumstances alleged. The Court finds Plaintiffs did not have a right to refuse the inspection, as the "highly regulated industry" exception to the Fourth Amendment warrant requirement applies here.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It remains a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *United States v. Harrison*, 689 F.3d 301, 306 (3d Cir. 2012) (quoting *California v. Acevedo*, 500 U.S. 565, 580 (1991)). This principle extends to administrative searches. *See Martin v. Int'l Matex Tank Terminals-Bayonne*, 928 F.2d 614, 620 (3d Cir. 1991) (citing *Camara v. Municipal Court*, 387 U.S. 523, 534 (1967)) ("[A]dministrative searches conducted without a warrant . . . . violate[] the

Fourth Amendment guarantee against unreasonable searches."). A warrant, therefore, is required before the government conducts an administrative search "or inspect[s] private premises absent certain narrow circumstances." *Heffner v. Murphy*, 745 F.3d 56, 66 (3d Cir. 2014).

An exception to the warrant requirement exists, however, for an administrative search of a highly regulated industry. *Id*. In determining whether an industry is "highly regulated," courts consider the "duration of the regulation's existence, pervasiveness of the regulatory scheme, and regularity of the regulation's application." *Id.* If a court finds the industry is highly regulated, the court then determines whether the warrantless search was reasonable, which depends on three criteria being met: (1) there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made; (2) the warrantless inspection must be necessary to further the regulatory scheme; and (3) the inspection program must provide a constitutionally adequate substitute for a warrant. *Id.* at 67.

The Court begins its inquiry by determining whether the construction industry is "highly regulated." The Pennsylvania Construction Code Act "was adopted in 1999 with the purpose of insuring 'uniform, modern construction standards and regulations throughout this Commonwealth,' to address the lack of construction codes in some municipalities and conflicting codes in others." *Allegheny Inspection Serv., Inc. v. N. Union Twp.*, 964 A.2d 878, 881 (Pa. 2009) (quoting 35 Pa. Stat. § 7210.102). The Act directed the Department of Labor and Industry to promulgate a Uniform Construction Code, 35 Pa. Stat. § 7210.301(a), and directed municipalities to enact ordinances adopting the Uniform Construction Code as their municipal building code, *id.* § 7210.501(a). The Department promulgated regulations adopting the Uniform Construction Code in 2004, and Lower Moreland Township thereafter adopted the Uniform

Construction Code as the building code for the Township. Lower Moreland Twp., Pa., Code § 82-2 (2004).

The Uniform Construction Code "applies to the construction, alteration, repair, movement, equipment, removal, demolition, location, maintenance, occupancy or change or occupancy of every building or structure which occurs on or after April 9, 2004." 34 Pa. Code. § 403.1(a)(1). Under the Code, "[a]n owner or authorized agent who intends to construct, enlarge, repair, move, demolish or change the occupancy of a residential building" must obtain a permit. *Id.* § 403.62(a). A construction code official must "inspect all construction for which a permit was issued," and the permit holder must "insure that the construction is accessible for inspection." *Id.* § 403.64(a). A construction code official must conduct inspections of the foundation; plumbing, mechanical, and electrical systems; frame and masonry; and wallboard, *id.* § 403.64(d), and "may conduct other inspections to ascertain compliance with the Uniform Construction Code or municipal ordinances," *id.* § 403.64(e). Section 403.86, the provision of the Code Sosnina was convicted of violating, gives a construction code official a right of entry to inspect as follows:

> (a) A construction code official may enter a building, structure or premises during normal business hours or at a time agreed to by the owner or owner's agent to perform inspections under the Uniform Construction Code, to enforce Uniform Construction Code provisions or if there is reasonable cause to believe a condition on the building, structure or premises violates the Uniform Construction Code or which constitutes an unsafe condition.

> (b) A construction code official may enter a building, structure or premises when the official presents credentials to the occupant and receives permission to enter.

> (c) A construction code official may not enter a building, structure or premises that is unoccupied or after normal business hours without obtaining permission to enter from the owner or the owner's agent.

> (d) A construction code official may seek the assistance of a law enforcement agency to gain entry to enforce the Uniform Construction Code when the

> construction code official has reasonable cause to believe that the building, structure or premises is unsafe.

*Id.* § 403.86. Under § 82.7 of the Lower Moreland Township Code, a violation of a provision of the Uniform Construction Code is "a civil or summary criminal offense, punishable by fine of not more than $1,000," with "[e]ach day that a violation continues after due notice has been served" constituting a separate offense." Lower Moreland Twp., Pa., Code § 82-7; *accord* 35 Pa. Stat. § 7210.903(a) (providing "[a]ny individual, firm or corporation that violates any provision of [the Pennsylvania Construction Code Act] commits a summary offense and shall, upon conviction, be sentenced to pay a fine of not more than $1,000 and costs").

The Uniform Construction Code shows "that the construction industry . . . in all its phases is subject to detailed and exacting regulation." *Frey v. Panza*, 621 F.2d 596, 598 (3d Cir. 1980). The Code has been in force for over a decade[7] and prescribes a broad range of standards and requirements building contractors are required to comply with. The Uniform Construction Code applies to all types of construction projects and covers each stage of the construction process. Moreover, the Code clearly establishes permit and inspection requirements, as well as an enforcement scheme of those requirements. Indeed, the Third Circuit has found the construction industry is a highly regulated industry and has permitted a warrantless inspection of a house under construction when the inspection is made pursuant to a building code and to ensure compliance with that building code. *See id.* The Court therefore has no trouble finding the construction industry is highly regulated.

---

[7] As noted above, the Uniform Construction Code was enacted in 2004 "to address the lack of construction codes in some municipalities and conflicting codes in others." *Allegheny Inspection Serv., Inc.*, 964 A.2d at 881 (quoting 35 Pa. Stat. § 7210.102). Of course, as *Frey* illustrates, some municipalities had in place construction codes prior to the Uniform Construction Code. *See, e.g.*, 621 F.2d at 597 (noting Hampton Township adopted its building code, at issue in the case, in 1952).

The Court must next determine whether the warrantless search sought by Schadegg was reasonable. For a warrantless search of a highly regulated industry to be reasonable, three criteria must be met:

> First, there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made . . . . Second, the warrantless inspections must be necessary to further the regulatory scheme. . . . Finally, the statute's inspection program . . . must provide a constitutionally adequate substitute for a warrant.

*Heffner*, 745 F.3d at 67 (quoting *New York v. Burger*, 482 U.S. 691 (1987)).

In passing the Pennsylvania Construction Code Act, which directed the Department of Labor and Industry to promulgate the Uniform Construction Code, the General Assembly found "[m]any municipalities within this Commonwealth have no construction codes to provide for the protection of life, health, property and the environment and for the safety and welfare of the consumer, general public and the owners and occupants of buildings and structures." *Sabatine v. Lower Mt. Bethel Tp.*, 957 A.2d 353, 356 (Pa. Commw. Ct. 2008) (quoting 35 P.S. § 7210.102(a) (emphasis omitted)). Furthermore, the "[i]ntent and purpose" of the Act is to "provide standards for the protection of life, health, property and environment and for the safety and welfare of the consumer, general public and the owners and occupants of buildings and structures." *Sabatine*, 957 A.2d at 356 (quoting 35 P.S. § 7210.102(b)(1) (emphasis omitted)). The Uniform Construction Code is therefore informed by substantial government interests.

The Court must now determine whether a warrantless search is necessary to further the regulatory objectives of the Uniform Construction Code. In construing this requirement, the Third Circuit has indicated that a defendant "need not show that warrantless searches are the *most* necessary way to advance its regulatory interest." *Heffner*, 745 F.3d at 56 (citing *Contreras v. City of Chicago*, 119 F.3d 1286, 1290 (7th Cir. 1997) ("The pertinent inquiry is whether the

[government's] objectives would be frustrated by requiring a warrant or notice." (alteration in *Heffner*)). In *Heffner*, the Third Circuit upheld "surprise" unannounced inspections of funeral homes pursuant to Pennsylvania's Funeral Director Law. *Heffner*, 745 F.3d at 66-70. The court held that "if inspectors are barred from entering funeral homes without a search warrant or advance notice, unscrupulous funeral practitioners could bring their establishments into regulatory compliance prior to an inspection, only to let them fall below prescribed standards when the threat of detection passes." *Id.* at 68.

The Third Circuit's reasoning applies here. To be sure, the search attempted by Schadegg did not have the element of surprise upheld by the *Heffner* court. Instead, the terms of the construction permit indicated all inspections would be requested two days in advance. Moreover, Shadegg sent a letter to Plaintiffs attempting to schedule an inspection to ensure the property was in compliance with the Uniform Construction Code. After Plaintiffs refused to schedule an inspection, Shadegg sent an additional letter to Plaintiffs, stating an inspection had been scheduled for April 8, 2015, and warned that failure to allow the inspection would result in a citation. Indeed, Plaintiff Rose advised Shadegg that she would not consent to the inspection, and Shadegg thereafter issued a citation to Plaintiff Sosnina pursuant to the Construction Code. The regulatory interest Shadegg sought to advance here is the same as the interest advanced by the warrantless search in *Heffner*: "to both detect and deter violations." *Id.* Warrantless searches therefore are necessary to further the regulatory objectives of the Construction Code.

Lastly, the Court must find the warrantless search provides a constitutionally adequate substitute. This requires "that a regulatory statute authorizing warrantless searches both (1) advise the owner of the premises that a search is pursuant to the law, and (2) limit the discretion of the officers conducting the search." *Id.* (citing *Burger*, 482 U.S. at 703). As established above,

the Uniform Construction Code advises property owners that as a condition to obtaining a permit for a construction project, a construction code official must inspect the construction site, and the permit holder must make the site accessible for inspection. Indeed, Shadegg's letter to Plaintiffs advised them that the inspection was authorized by § 403.86 of the Uniform Construction Code and was necessary "to determine if the dwelling is safe for occupancy as a result of incomplete construction which may cause an unsafe condition." The Construction Code therefore advises a premises owner that the inspection of a construction site is pursuant to the law.

The Court also finds the Construction Code sufficiently limits the discretion of the officers conducting inspections. The Third Circuit has declined to find a Fourth Amendment violation in similar circumstances and under an analogous statutory scheme. In *Frey v. Panza*, a building contractor asserted Fourth and Fourteenth Amendment challenges to a municipal building code for permitting warrantless inspections of construction sites. 621 F.2d at 597. Like the Uniform Construction Code, the municipal building code in *Frey* was comprehensive, "providing for the issuance of building permits, inspections of construction in progress, standards for building materials, design criteria for plumbing, electrical, and structural members, and other detailed requirements for construction." *Id.* The municipal building code required a contractor, prior to beginning construction, to obtain a building permit conditioned on complying with the code, which included consenting to four scheduled inspections of constructions in progress and authorizing a building inspector to enter the construction area at any reasonable hour to enforce the provisions of the building code. *Id.*

Noting that the "construction industry has a long history of government supervision and oversight enforced by inspection" and the specific code at issue subjected the township's construction industry "to detailed and exacting regulation," the Third Circuit found the

13

warrantless inspection was permissible. *Id.* at 598. By voluntarily engaging in construction work requiring a permit, the Third Circuit found the contractor freely subjected himself to the burdens of the building code, including inspections. *Id.* The court further found the contractor lacked an expectation of privacy where he "must file plans before he begins work," "is held to the requirements of the code as his project proceeds," and "is aware in advance that the work is subject to inspection without notice." *Id.*

The court also emphasized that the building code contained restrictions which protected against unreasonable searches. For one, the building code "is directed specifically and exclusively at that one industry." *Id.* Additionally, the code "limits inspections to the construction site, at reasonable hours, and for the purposes of enforcing compliance with the building code." *Id.* These limitations, the court found, "point toward the reasonableness of the inspection and counsel against requiring an administrative warrant." *Id.*

The same result follows here. The Uniform Construction Code places certain burdens on those seeking a permit to engage in construction, including inspections. Plaintiffs, by seeking a permit, had advance notice of the required inspections. Furthermore, Schadegg wrote two letters to Plaintiffs attempting to coordinate a scheduled inspection, to no avail, and he advised Plaintiffs of the legal consequences of refusing the inspection.

In addition, the Court notes the Uniform Construction Code is replete with restrictions and protections limiting the discretion of the officers conducting the search. As in *Frey*, the Uniform Construction Code is directed specifically and exclusively at the construction industry. The Construction Code limits inspections to the construction site "for which a permit was issued," 34 Pa. Code § 403.64(a), for the limited purpose of "enforc[ing] Uniform Construction Code provisions," *id.* § 403.86(a), and only "during normal business hours or at a time agreed to

by the owner or owner's agent," *id.* Further, a construction code official must present his credentials *and* receive permission to enter prior to an inspection. *Id.* § 403.86(c), (d). Of course, refusal to allow a required inspection is "a civil or summary criminal offense, punishable by fine of not more than $1,000." Lower Moreland Twp., Pa., Code § 82-7. Because of the Uniform Construction Code's numerous protections and limitations, the Court finds the Code provides a constitutionally adequate substitute for a warrant.

The search contemplated by Shadegg fell within the highly regulated industries exception to the warrant requirement of the Fourth Amendment. Plaintiffs therefore did not have a Fourth Amendment right to refuse to allow the inspection under the circumstances alleged. Their Complaint will be dismissed.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.